UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| DOUGLAS V. KILLINS, | ) |
|---|---|
| Petitioner, | ) |
| v. | ) No. 3:20-CV-00347-JRG-HBG |
| MIKE PARRIS and STATE OF TENNESSEE, | ) |
| Respondents. | ) |

## MEMORANDUM OPINION

Petitioner Douglas V. Killins, an inmate in the custody of the Tennessee Department of Correction ("TDOC") currently housed at the Morgan County Correctional Complex, has filed a "Petition for Writ of Habeas Corpus Relief" pursuant to 28 U.S.C. § 2254 alleging that his incarceration in the midst of the COVID-19[1] pandemic places his life in danger [Doc. 6]. He has also filed a "Motion for Preliminary Injunction" seeking release from confinement [Doc. 10]. Respondents have filed an answer to the petition and a response in opposition to the motion or

---

[1] COVID-19 is a coronavirus first identified in Wuhan, China in December 2019. *See* World Health Organization, "What is COVID-19?", *available at* https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses (last accessed Sept. 23, 2020). The Sixth Circuit has explained:

> The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing.

*Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020).

injunctive relief [Docs. 9 and 11]. Upon consideration of the parties' allegations, the factual background, and the applicable law, the Court finds that the petition for writ of habeas corpus [Doc. 6] and motion for injunctive relief [Doc. 10] should be **DENIED** for the reasons that follow.

## I.     PETITIONER'S ALLEGATIONS

Petitioner maintains that "Tennessee prisons have a high number of coronavirus cases," which places his "life in danger by being in a closed environment while the pandemic spreads" [Doc. 6 at 4]. [2] He contends that he is medically vulnerable to the virus, as he is over fifty years old and is "weak, frail, and going blind" [*Id*. at 3-4]. Petitioner maintains that corrections officers enter pods and touch trays and doors, thereby exposing the confined prisoners to whatever conditions these officers experience in the free world [*Id*. at 4, 17]. He alleges that the pod doors and food trays are not cleaned hourly, that the food is prepared by other inmates who touch the food and trays, and that he is, therefore, forced to accept trays of food that have been touched by numerous others [*Id*. at 4]. Maintaining that "other inmates in many states have been released due to pandemic," he asks the Court to order his release from prison [Doc. 6 at 4, 8; Doc. 10 at 8].

## II.    TDOC RESPONSE TO PANDEMIC

As of September 21, 2020, TDOC has administered COVID-19 tests to 29, 239 inmates. *See* Tenn. Dep't of Corr., TDOC Inmates COVID-19 Testing, *available at* https://www.tn.gov/content/dam/tn/correction/documents/TDOCInmatesCOVID19.pdf (last accessed Sept. 23, 2020). Testing revealed that 609 inmates in TDOC custody have tested positive for the virus; 23,738 inmates tested negative; 4,581 inmates have recovered from the virus; 211 inmates have test results pending; and a total of 17 inmate deaths are suspected from COVID-19.

---

[2] In an earlier filed petition in which he alleged only violations of Tennessee law, Petitioner also alleged that staff members refuse to wear masks, and that he has medical conditions which render him more vulnerable to the virus [*See* Doc. 1 at 6-7].

*Id.* At MCCX, the facility where Petitioner is housed, no inmates have recently tested positive for COVID-19, and no deaths have resulted from the virus. *Id.*

TDOC has developed policies to isolate COVID-19 infectious inmates and to quarantine other inmates who have been in close contact with the infected inmate. *See* Tenn. Dep't of Corr., TDOC Takes COVID-19 Actions, *available at* https://www.tn.gov/correction/ news/2020/9/3/tdoctakes-covid-19-actions.html (last accessed Sept. 23, 2020). This response incorporates Center of Disease Control ("CDC") and Tennessee Department of Health guidelines, which include frequent hand washing; avoiding touching eyes, nose, and mouth; using social distancing; staying at home if sick; cleaning and disinfecting often; and wearing protective medical masks. *Id.*; *see also* Tenn. Dep't of Corr., Frequently Asked Questions Regarding COVID-19, *available at* https://www.tn.gov/correction/frequently-asked-questions-regarding-covid-19.html (last accessed September 23, 2020).

Additionally, TDOC screens anyone entering its facilities for COVID-19 related symptoms, it disinfects high-touch areas multiple times per day, and it supplies masks to staff and inmates. *See* Tenn. Dep't of Corr., TDOC Takes COVID-19 Actions, *available at* https://www.tn.gov/correction/news/2020/9/3/tdoc-takes-covid-19-actions.html (last accessed Sept. 23, 2020); Tenn. Dep't of Corr., Frequently Asked Questions Regarding COVID-19, *available at* https://www.tn.gov/correction/frequently-asked-questions-regarding-covid-19.html (last accessed September 23, 2020). Moreover, TDOC has suspended visitation for family, friends, and volunteers, and movement throughout the prisons has been suspended when necessary temperature checks and cleaning measures are being carried out. Tenn. Dep't of Corr., Frequently Asked Questions Regarding COVID-19, *available at* https://www.tn.gov/correction/frequently-asked-questions-regarding-covid-19.html (last accessed September 23, 2020).

### III. DISCUSSION

#### A. Petitioner's Claim is Not Cognizable in a Federal Habeas Action

The ordinary vehicle for constitutional challenges to the conditions of confinement is in a complaint under 42 U.S.C. § 1983, while constitutional challenges to the fact or duration of confinement are typically brought in a habeas corpus petition. *See, e.g.*, *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973). In fact, the Sixth Circuit has held that claims relating to "conditions of confinement" are not cognizable in a federal habeas action. *See Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013) (citations omitted). An exception to this general rule exists, however, "where a petitioner claims that no set of conditions would be constitutionally sufficient" to address the constitutional injury, in which case "the claim should be construed as challenging the fact or extent, rather than the conditions, of the confinement." *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020).

When a prisoner alleges in a habeas corpus petition that his prison conditions are so dire that the constitutional violation may only be remedied by release, a petitioner's allegations must undergo a two-step analysis before the merits of the claim are measured against constitutional standards. *See Busby v. Bonner*, No. 2:20-cv-2359, 2020 WL 4668757, at *7 (W.D. Tenn. Aug. 7, 2020) (citing *Wilson,* 961 F.3d at 829). Before analyzing the merits of the claim, a court must first analyze its propriety in a habeas action. *Id*. That is, a petitioner must show that the unconstitutional conditions at the prison are incurable before the petition properly sets forth a claim for federal habeas review. *See id*. If a petitioner clears the first hurdle by demonstrating the claim's propriety in a habeas petition, the court must then "independently confirm that there are indeed no legally sufficient conditions possible at the jail." *Id*.

4

Here, Petitioner does not claim that no set of conditions would be constitutionally significant to avoid a deprivation of his constitutional rights, and indeed, given the fact that the latest testing has revealed that no inmates at Petitioner's facility are currently infected, he fails to make such a showing. Accordingly, Petitioner's claim is not cognizable on federal habeas review.

### B. Petitioner has Failed to Exhaust State Remedies

The Court otherwise notes that a petitioner seeking federal habeas relief must first exhaust his available State-court remedies. *See* 28 U.S.C. § 2254(b) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). If a petitioner fails to exhaust his claims prior to seeking federal habeas relief, his federal habeas petition must ordinarily be dismissed. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Duncan v. Walker*, 533 U.S. 167, 178-79 (2001) ("The exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment."). The burden is on the petitioner to demonstrate compliance with the exhaustion requirement. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). However, an exception to the exhaustion requirement exists where "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B).

Here, Petitioner does not allege that he has attempted to exhaust his claim using the State's available corrective processes, which the Court finds include the TDOC grievance procedure and TDOC medical furlough procedure. *See* Tenn. Dep't. of Correction, Inmate Grievance Procedures,

*available at* https://www.tn.gov/content/dam/tn/correction/documents/501-01.pdf (last accessed Sept. 23, 2020); Tenn. Dep't. of Correction, Medical Furloughs, *available at* https://www.tn.gov/content/dam/tn/correction/documents/51101-1.pdf (last accessed Sept. 23, 2020). Either of these avenues is a process by which Petitioner can seek release from custody due to the COVID-19 pandemic. Accordingly, the Court finds that Petitioner is not excused from the exhaustion requirement in 28 U.S.C. § 2254(b)(1)(B), and that he failed to properly exhaust his claim prior to filing the instant action.

## IV. PRELIMINARY INJUNCTION

Petitioner has also filed a motion for injunctive relief [Doc. 10]. A party may seek injunctive relief under Rule 65 of the Federal Rules of Civil Procedure if the party believes it will otherwise suffer irreparable harm or injury during the pendency of the action. Fed. R. Civ. P. 65.

In determining whether to grant a party's request for injunctive relief, the Court must consider four factors: (1) whether the movant would suffer irreparable harm without the injunction; (2) whether issuance of the injunction would cause substantial harm to others; (3) whether the public interest would be served by the issuance of the injunction; and (4) whether the movant has demonstrated a strong likelihood of success on the merits. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). These factors are "not prerequisites that must be met," but rather, considerations the Court must balance. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). Because a preliminary injunction is "an extraordinary remedy never awarded as of right," the Court must carefully consider the scope of the request and award injunctive relief only upon a clear showing that the movant is entitled to such relief. *Winter v. Nat.*

6

*Res. Def. Council*, 555 U.S. 7, 20 (2008). The movant must "carry his or her burden of proving that the circumstances clearly demand it." *Overstreet,* 305 F.3d at 573.

The Court has determined that Petitioner has not properly set forth a claim for federal habeas review, as he has not demonstrated that the complained-of conditions are incurable by measures short of release from custody. It has also determined that Petitioner has not exhausted his available State-court remedies prior to filing the instant action. It now additionally finds that Petitioner has failed to establish that TDOC officials have acted with deliberate indifference to the substantial risk of harm created by COVID-19. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson*, 961 F.3d at 840-41. That is, he has failed to demonstrate that Respondents know of and have disregarded "an excessive risk to inmate health or safety" by failing to take reasonable measures to abate the harm posed by the virus. *Farmer*, 511 U.S. at 834, 847.

As noted above, TDOC officials have undertaken substantial measures to protect prisoners from COVID-19 infection. These measures have proved to be a reasonable response to the pandemic, as no prisoners at Petitioner's facility tested positive for COVID-19 during the last round of testing. Therefore, Petitioner has not established a substantial likelihood of success on the merits of his claim, nor has he demonstrated irreparable injury absent an injunction. Further, the Court finds that the release of Petitioner, a convicted murderer, would pose a risk of harm to others and fail to serve the public interest. *See, e.g., State v. Killins*, No. M2004-00341-CCA-R3-CD, 2005 WL 94422, at *1 (Tenn. Crim. App. Jan. 13, 2005), *perm. app. denied* (Tenn. May 2, 2005). Therefore, Petitioner's motion for injunctive relief [Doc. 10] will be **DENIED**.

V.  **CERTIFICATE OF APPEALABILITY**

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue

7

unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which he may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be **DENIED** in this case.

## VI.    CONCLUSION

For the reasons set forth above, Petitioner's § 2254 petition [Doc. 6] and motion for injunctive relief [Doc. 10] will be **DENIED**, and this action will be **DISMISSED**. A COA from this decision will be **DENIED**.

The Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on any subsequent appeal. *See* Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

ENTER:

                                        s/J. RONNIE GREER
                                  UNITED STATES DISTRICT JUDGE